UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Magnolia and Vine Inc.,

    Plaintiff,

v.

Tapestry, Inc., and Kate Spade, LLC,

    Defendants.

Case No. 17-cv-4382 (JNE/DTS)
ORDER

James T. Nikolai and Peter G. Nikolai, Nikolai & Mersereau, P.A., appeared for Magnolia and Vine Inc.

Dalia Beth Kothari, Will J. Orlady, and David Brandon Conrad, Fish & Richardson P.C., appeared for Tapestry, Inc., and Kate Spade, LLC.

    This is an action for patent infringement brought by Magnolia and Vine Inc. against Tapestry, Inc., and Kate Spade, LLC. Six of the seven patents in suit are design patents. As to those six, Tapestry and Kate Spade moved to dismiss Magnolia and Vine's infringement claims for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Tapestry and Kate Spade argued that the design patents are invalid, that the accused products do not infringe, and that Magnolia and Vine failed to properly plead willful infringement or induced infringement. For the reasons set forth below, the Court denies Tapestry and Kate Spade's motion.

## I.   BACKGROUND

    Magnolia and Vine "designs and sells a variety of fashion accessories including jewelry, sunglasses, footwear, caps, mittens and gloves." Am. Compl. ¶ 1. It "also sells

1

purses, handbags, wallets and a collection of handbags adapted to be used with a wide variety of accent covers, tassels and straps purchased by [its] customers to customize the look of the handbags." Am. Compl. ¶ 1.

Tapestry, formerly known as Coach, Inc., "sells premium handbags and lifestyle accessories." Am. Compl. ¶ 2. It completed its acquisition of Kate Spade in July 2017. Am. Compl. ¶ 4. According to a Form 10-K filed by Coach with the United States Securities and Exchange Commission for the fiscal year ending July 1, 2017, "Coach owns all of the material worldwide trademark rights used in connection with the production, marketing, distribution and sale of all branded products for Coach, Stuart Weitzman and Kate Spade." Am. Compl. ¶ 4.

Magnolia and Vine owns U.S. Patent No. D613,062; U.S. Patent No. D637,399; U.S. Patent No. D611,705; U.S. Patent No. D636,988; U.S. Patent No. D637,810; U.S. Patent No. D638,627; and U.S. Patent No. 9,198,489. Am. Compl. ¶ 22. It asserted that Tapestry and Kate Spade infringe the patents by, for example, selling products "as part of their 'Make it Mine Candace' collection offered under the Kate Spade trademark"; that "the sales are made by Kate Spade, but controlled by [Tapestry] because [Tapestry], as the owner of the trademark, now controls the products advertised and sold under that trademark"; and that sales of the infringing products take place in retail stores and through websites. Am. Compl. ¶ 23. Examples of the "Make it Mine Candace" collection appear in the following photos.





Am. Compl. ¶ 25.

### *The asserted patents*

The '062 Patent and the '399 Patent are entitled "Interchangeable handbag cover." Each claims "[t]he ornamental design for an interchangeable handbag cover, as shown and described." In each patent, Figure 3 "is an isolated, perspective view of the handbag cover in the closed position." In the '399 Patent, "[t]he claimed design is shown broken away to indicate indeterminate length." Figure 3 of each patent appears below.

3

 

The '062 Patent, Figure 3                    The '399 Patent, Figure 3

The '627 Patent, which is entitled "Handbag with interchangeable handbag cover," claims "[t]he ornamental design for an handbag with interchangeable handbag cover, as shown and described." Figure 1 "is a top perspective view of an handbag with interchangeable handbag cover in a partially attached conformation about an exemplary base handbag shown in phantom." Figure 3 "is an isolated, perspective view of the

 

The '627 Patent, Figure 1                    The '627 Patent, Figure 3

handbag cover in the closed position." "The dotted lines illustrate environmental features of an exemplary base handbag to which the handbag cover attaches, and form no part of the claimed design," which "is shown broken away to illustrate indeterminate length."

The '705 Patent, which is entitled "Handbag," claims "[t]he ornamental design for a handbag, as shown and described." Figure 1 "is a top perspective view of the claimed base handbag with an exemplary interchangeable handbag cover shown in phantom in a closed, attached conformation about the base handbag," and Figure 2 "is a top perspective view thereof, with the exemplary interchangeable handbag cover shown in phantom in a partially opened, detached conformation about the base handbag." The patent states: "The broken lines showing the interchangeable handbag cover is for illustrative purposes and forms no part of the claimed design."



The '705 Patent, Figure 1                    The '705 Patent, Figure 2

The '988 Patent and the '810 Patent are entitled "Handbag with interchangeable handbag cover." Each claims "[t]he ornamental design for a handbag with

5

interchangeable handbag cover, as shown and described." In each, Figure 1 "is a top perspective view of the claimed base handbag with an exemplary interchangeable handbag cover shown in phantom in a closed, attached conformation about the base handbag," and Figure 2 "is a top perspective view thereof, with the exemplary interchangeable handbag cover shown in phantom in a partially opened, detached conformation about the base handbag." The '988 Patent states: "The broken lines showing the interchangeable handbag cover is for illustrative purposes and forms no part of the claimed design." In addition, "[t]he claimed design is shown broken away to indicate indeterminate length." The '810 Patent states: "The broken lines showing the interchangeable handbag cover are for the purposes of illustrating environment and forms no part of the claimed design." Figure 1 and Figure 2 of the '988 Patent and the '810 Patent appear below.





The '988 Patent, Figure 1              The '988 Patent, Figure 2

 

**The '810 Patent, Figure 1**     **The '810 Patent, Figure 2**

The '489 Patent, which is entitled "Systems and methods for customizing handbags," has six claims. Claim 1 is the only independent claim:

1. A handbag kit configured for customizing a handbag comprising:

    a base handbag having a substantially triangular cross section, the base handbag having two opposing ends and two opposing sides, the two opposing sides being able to pivotally extending toward or away from each other;

    a plurality of releasable clips attached to an upper portion of the base handbag;

    a plurality of handles configured for releasable attachment to the releasable clips;

    a plurality of tri-fold handbag covers, each handbag cover being configured to fold about and attract to the base handbag as each cover is moved toward contact with the base handbag, wherein each of the handbag covers comprises at least one surface with a different aesthetic design, each handbag cover also being configured to be able to lie substantially flat; and

    a plurality of magnet fastener elements attached to at least one of the base handbag and each handbag cover;

7

wherein attachment of any of the plurality of handbag covers changes the aesthetic design of the base handbag from one handbag cover to the next, and wherein each of the magnet fastener elements is hidden from view after attachment of a handbag cover to the base handbag.

## II.     DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff satisfies this requirement by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

### A.     Invalidity due to functionality

Arguing that "the asserted design patents are invalid because the patented designs are dictated primarily by function," Tapestry and Kate Spade moved to dismiss Magnolia and Vine's claims that they infringe the design patents. "[A] design patent cannot claim a purely functional design—a design patent is invalid if its overall appearance is 'dictated by' its function." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). "[A]s long as the design is not primarily functional, 'the design claim is not invalid, even if certain elements have functional purposes.' That is because a design

8

patent's claim protects an article of manufacture, which 'necessarily serves a utilitarian purpose.'" *Id.* (citation omitted).

"Invalidity due to functionality is an affirmative defense to a claim of infringement of a design patent, and must be proved by the party asserting the defense. Applying the presumption of validity, 35 U.S.C. § 282, invalidity of a design patent must be established by clear and convincing evidence." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). To invalidate a design patent due to functionality, a "stringent" standard must be satisfied:

> We apply a stringent standard for invalidating a design patent on grounds of functionality: the design of a useful article is deemed functional where "the appearance of the claimed design is 'dictated by' the use or purpose of the article." "[T]he design must not be governed solely by function, *i.e.*, that this is not the only possible form of the article that could perform its function." "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." That is, if other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional. Invalidity of a design patent claim must be established by clear and convincing evidence.

*Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) (alteration in original) (citations omitted); *see Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015) ("We have described as 'stringent' this standard as it applies to invalidating design patents on grounds of functionality."). "Whether a patented design is functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

An affirmative defense "generally must be affirmatively pled and proved," but it can provide the basis for dismissal under Rule 12(b)(6) if it is apparent on the face of the

9

complaint. *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 861 (8th Cir. 2013); *see C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012).[1] Nothing in Magnolia and Vine's amended complaint indicates that the stringent standard for invalidating a design patent due to functionality is satisfied with regard to the asserted design patents. Insofar as Tapestry and Kate Spade moved to dismiss the claims that they infringe the design patents on the ground that the design patents are invalid due to functionality, the Court denies their motion.

**B.   Infringement**

Tapestry and Kate Spade asserted that Magnolia and Vine's claims of infringement of the design patents should be dismissed because the accused products do not infringe. According to Tapestry and Kate Spade, "[e]ven if all of [Magnolia and Vine's] allegations were true, there exist clear differences between the patented base handbag and handbag covers and the accused Kate Spade purse such that 'an ordinary observer, familiar with the prior art designs,' would *not* be 'deceived into believing that the accused product is the same as the patented design.'"

"A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon Endo-Surgery*, 796 F.3d at 1335 (alteration in

---

[1]   The Federal Circuit reviews "procedural questions that are not unique to patent law, such as a grant of a motion to dismiss for failure to state a claim, according to the law of the regional circuit." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017), *petition for cert. filed*, 86 U.S.L.W. 3489 (U.S. Jan. 16, 2018) (No. 17-1319).

original) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008)); *see Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  "The ordinary observer test applies to the patented design in its entirety, as it is claimed.  '[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.'"  *Crocs*, 598 F.3d at 1303 (alteration in original) (citation omitted) (quoting *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)).

The differences between the asserted design patents and the accused products are not so great as to allow for dismissal of Magnolia and Vine's claims of infringement of the design patents at this stage of the litigation.  *Cf. Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933-34 (Fed. Cir. 2014) ("These differences are markedly apparent, and the court properly concluded that Ms. Anderson did not state a plausible claim for why the ordinary observer would be deceived into believing that the Depend® products were the same as the patented design.").  Insofar as Tapestry and Kate Spade moved to dismiss on the ground that the accused products do not infringe the asserted design patents, the Court denies the motion.

## C.    Willful infringement and induced infringement

Tapestry and Kate Spade moved to dismiss claims that they willfully infringed the design patents and that they induced infringement of the design patents.  Magnolia and Vine did not assert claims of willful infringement or induced infringement of the design patents.  *Cf. Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) ("For an allegation of induced infringement to survive a motion to dismiss, a complaint

must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'"); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced.  However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement."), *abrogated by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  Magnolia and Vine's claims of willful infringement and induced infringement are based on the '489 Patent.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Tapestry and Kate Spade's motion to dismiss [Docket No. 37] is DENIED.

Dated: May 14, 2018

> s/ Joan N. Ericksen
> JOAN N. ERICKSEN
> United States District Judge